### PASCARELLA v KURZ

Ohio Appeals, 7th Dist, Mahoning Co

No 2419.   Decided Apr 15, 1938

J. S. Cooper, Youngstown, for Plaintiff-Appellee.

Messrs Hahn, Williams & Shermer, Youngstown, for Defendant-Appellant.

## OPINION

By BENNETT, J.

The defendant appellant was the former wife of the plaintiff-appellee. She obtained an uncontested decree of divorce from him in 1935 and was awarded the custody of four of their five children, the fifth child being in a convent. Prior to the events litigated in this proceeding, three of the four children had left the mother and were living with the father.

On October 11th, 1935, the defendant called at the Bencroft School as school was being dismissed, to meet her daughter, Gloria, the only one of her children then living with her. She arrived in time to see Gloria getting into an automobile driven by her eldest son. Gloria's father was also in the automobile. The two stories vary widely from that point on. The defendant and a passenger in the car in which she was riding, gave a melodramatic story of drawing up alongside of the other car, of "hollering" and then pursu-

ing it at speeds of seventy to eighty miles an hour, past stop signs and through traffic lights over the streets of Youngstown, Poland, Campbell and Struthers, and of finally losing it when she did not dare follow it down an ash road. The story of the plaintiff and Gloria was that they were conscious of no pursuit, drove at a decent rate of speed over to Woodrow Wilson School to see the other two children, stopped there, found that the children had already started home, and then themselves drove to the plaintiff's home on Front Street in Youngstown.

The plaintiff's story was that, after losing the pursued car, she returned to town and, after consulting her lawyer, filed an affidavit against her former husband for a violation of §12425, GC, the so-called child-stealing statute. He was arrested that evening, confined in the county jail for an hour or so and released on bond. The case was set and continued four times by the justice of the peace who issued the warrant and was finally dismissed at the request of the prosecuting witness. Gloria, in the meantime, had gone to live with her father permanently.

The plaintiff filed this action for malicious prosecution against the defendant, the jury gave him a verdict of $1500.00, and judgment was rendered on the verdict. This appeal is on questions of law.

As one ground of error the defendant-appellee relies on the matter of advice of counsel as a defense. Such a defense is good only upon complete disclosure of the facts to the attorney. The defendant testified that she told her attorney everything as it happened, but that must, of course, mean that she told him everything as she told it to the jury. She can hardly contend, at least, that she told him one story and the jury another. The jury decided, apparently, that her story to them of what happened was untrue and it certainly can not be a defense to rely on the advice of counsel given on a story which the jury reasonably finds untrue. In other words, this ground of error, in our opinion, simmers down to a question as to whether we find the jury's verdict as against the weight of the evidence upon the issue of a complete disclosure of the true story. This we are not prepared to do.

As further ground of error the appellant-defendant claims (1) that there is no credible testimony at all showing either lack of probable cause or malice, and (2) that, at least, the findings of the jury for the

plaintiff on these issues were against the manifest weight of the evidence.

As to actual malice, as opposed to that which is said to follow as a matter of law from lack of probable cause, ▉▉▉ there is testimony given by the plaintiff which, if believed by the jury, would have shown it. We are unable to say that the finding of malice by the general verdict is manifestly against the weight of the evidence. It lies in the field of which witnesses were to be believed.

On the question of probable cause, however, we have a more difficult question. The mother, by court decree, was entitled to the custody of her four children. Three of them she had already lost to the father. The children all testified for the father, and the reasons why she had lost them to him are disputed. The jury apparently believed the story of the ▉▉▉ father and children, and not that of the mother. Be that as it may, the mother was entitled to the custody of Gloria, and when she saw Gloria disappearing with her father in an automobile without any request made to her or any notice given by him to her, she would be justified, at least, in thinking that the father was "carrying away" the child "with intent * * * to detain" her from her custody, Mrs. Kurz being the person "having the lawful charge and custody thereof" in the language of §12425, GC.

If Mrs. Kurz's story were to be believed of the "hollering" conversation in the first place, and of the ensuing chase for miles at high speed and in violation of all traffic laws, there would be no question of the existence of probable cause. But the jury apparently did not believe this story.

But, taking the plaintiff's own story, he was certainly taking the daughter away without any notice to the mother, and he kept her without any word to the mother until about seven o'clock that night, when he was arrested. Gloria says she saw her mother at the school. It is almost inconceivable that the father and the brother did not also see her. It seems to us highly probable that §12425, GC, was violated. It may be conceded that the father might have met Gloria and talked to her, and even have taken her over to the other school to see her brother and sister, without having committed a crime. But taking her in the automobile seems to satisfy the physical requirements of §12425, GC, and keeping her until seven o'clock that evening, without giving the mother any notice at all,

seems inconsistent with a subjective attitude on his part that would come within the holding of the Supreme Court in Mayo v State, 43 Oh St 467.

On the whole, we feel that even the plaintiff's own story would tend to show that the defendant had probable cause to fear that a violation of §12425, GC, was being committed, and we reverse the case on the ground that the verdict was against the weight of the evidence on the issue of probable cause.

The only other error argued is the charge by the court that the jury could take into consideration mental suffering and loss of work caused the plaintiff by his prosecution. Neither of these elements was mentioned in the petition. The petition contains an allegation that the plaintiff's reputation was damaged in the amount of $10,000, and then concludes with a prayer for $10,000 damages. Some evidence was introduced, without objection, concerning loss of business because of the arrest and prosecution.

Our understanding on the general questions involved is that mental suffering and humiliation are held to be ▉▉▉ elements naturally flowing from a tort of this sort, **Jacquesin v Bunker, 15 Oh Ap 491**; that mental suffering may ordinarily be considered without any specific averment of such element of damage in those cases in which mental suffering may be considered at all, **Ohio Jurisprudence, Damages, §163,** and that, inasmuch as the testimony relative to loss of business, ▉▉▉ as opposed to loss of time, sketchy and unsatisfactory as it was, was introduced without objection, and we see no prejudicial error in the court's allowing the jury to consider it. Certainly, the court could have allowed amendment of the pleadings to conform to the proof if that had been necessary.

In passing we may add that we feel the amount of the verdict to be excessive, despite the fact that cases of malicious prosecution lie in a field where there is no good measuring stick of compensatory damages. The court did not instruct the jury that it might assess punitive damages.

"Since the question of punitive damages was not submitted to the jury the concern is with compensatory damages only."

**Jones v M-N Banking Co., 132 Oh St 341, 352.**

As such, the verdict seems to us entirely

out of line, and to indicate a purpose on the part of the jury to enter the punitive field on their own volition, by reason of some prejudice received during the trial. With some justification plaintiff's counsel claim that if the jury was moved by any passion and prejudice in its verdict, it may in large part have been caused by the defendant herself during the ▮▮▮▮ ▮ trial. However, that may be, the verdict in our judgment was excessive and must have been based on something other than relevant consideration.

Reversed and remanded for retrial.

NICHOLS and CARTER, JJ, concur.

NICHOLS, J. In my judgment probable cause affirmatively appears from the record. I therefore join in the judgment of reversal but believe that final judgment should be entered for the defendant.